UNITED STATES

v.

**Steven O. RAY, 252 08 8532, Seaman Recruit (E–1), U.S. Navy.**

**NMCM 82 4540.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 8 July 1982.

Decided 11 Feb. 1983.

LTCOL M.W. Lucas, USMC, Appellate Defense Counsel.

LT Ann D. Carroll, JAGC, USNR, Appellate Defense Counsel.

LT Darrell M. Grams, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, C.J., and GORMLEY and MIELCZARSKI, JJ.

GORMLEY, Judge:

Tried by special court-martial, military judge alone, appellant was found guilty, contrary to his pleas, of desertion under Article 85, Uniform Code of Military Justice, 10 U.S.C. § 885, based upon an unauthorized absence in excess of two years. The military judge sentenced appellant to be confined at hard labor for 4 months, to forfeit $225.00 pay per month for 2 months, and to be separated from the naval service with a bad conduct discharge. The findings and sentence were approved, without change, by the reviewing authorities below.

Appellant now assigns the following error for our consideration:

PREJUDICIAL ERROR OCCURRED WHEN THE MILITARY JUDGE ALLOWED TRIAL COUNSEL TO RECALL THE APPELLANT TO THE WITNESS STAND AFTER APPELLANT HAD BEEN EXCUSED FROM THE WITNESS STAND AND THE DEFENSE HAD RESTED.

At trial, the defense case-in-chief centered upon the testimony of appellant. Raising the defense of mistake of fact, appellant testified at great length concerning the events immediately prior to his unauthorized departure from the disciplinary barracks, Naval Station, Charleston, South Carolina. Appellant related a series of conversations with administrative personnel at the disciplinary barracks, from which appellant concluded that he had been administratively separated based upon his alleged ho-

mosexuality. The remainder of appellant's testimony covered his subsequent employment history as a "civilian."

Both trial counsel and the military judge traversed the same events in a series of questions which challenged the specifics of appellant's purported discharge. The court's examination was particularly extensive, and neither counsel expressed a desire to pose questions in light of the court's inquiry. After the defense rested its case, the Government was asked whether it intended to offer a case in rebuttal. After some initial hesitancy, trial counsel indicated that a continuance would be necessary to allow additional time for preparation, based upon unexpected information presented during the defense case. Scheduling difficulties necessitated a 20-day continuance. During this interval a new trial counsel was assigned to the case.

When trial resumed, the Government offered two stipulations of expected testimony and then moved to recall appellant to the stand, arguing that additional questions were desired in light of appellant's earlier surprise testimony. Defense counsel objected on the ground that the Government previously had examined the accused at length and that the defense had rested its case. Overruling the defense objection, the military judge concluded that the Government's requested course of action was not inappropriate, and that appellant's refusal to return to the stand would require the court to strike appellant's testimony in its entirety. During the cross-examination that followed, trial counsel merely explored the same facts previously challenged by his predecessor. The Government followed that cross-examination with rebuttal testimony from witnesses familiar with disciplinary barracks procedures in effect during the time period pertinent to the charge before the court.

 The right against self-incrimination, while an essential constitutional protection, is not without qualification. Having elected to testify voluntarily on the issue of guilt or innocence, an accused necessarily waives his privilege against self-incrimination as to any relevant matters rea-

sonably raised by his direct testimony. *Brown v. United States,* 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958); *United States v. Vandermark,* 14 M.J. 690 (N.M.C. M.R.1982); Mil.R.Evid. 301(f).

[A] witness has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all. He cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, an immunity from cross-examination on the matters he has himself put in dispute. It would make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell.

*Brown v. United States,* 356 U.S. at 155–56, 78 S.Ct. at 627. The decision to testify on the merits places the accused in a status identical to that of any other witness. *Vandermark, supra* at 693.

In this respect, the right against self-incrimination must be reconciled with the law's interest in establishing the truth through the adversarial process. Cross-examination provides an unmatched opportunity to challenge the veracity and credibility of opposing witnesses. Denial of that opportunity necessitates appropriate remedial action by the trial court. *See United States v. Rivas,* 3 M.J. 282 (C.M.A.1977). Yet the need to strike some balance between these conflicting principles was overlooked in *United States v. Newton,* 1 M.J. 654 (N.C.M.R.1975), cited by appellant and by the military judge in the instant case.

 Our earlier decision in *United States v. Newton,* acknowledging the safeguards inherent in the Fifth Amendment, held that an accused could not be recalled for additional cross-examination absent his express consent. That decision appears overly broad in light of the narrow scope of the supplemental questions posed by the Government in that case. An accused's election to testify carries the possibility of thorough cross-examination, and a waiver

of the privilege against self-incrimination extends to any area reasonably addressed during direct testimony. The parameters of that waiver should be defined, not by the procedural sequence of events following an accused's direct testimony, but rather by the content of the testimony itself. *See* Mil.R.Evid. 611(b). Thus we believe that the Fifth Amendment does not prevent the Government from recalling an accused for further cross-examination when the accused has assumed a status comparable to any other witness based upon his earlier voluntary testimony.

■ The Government's right to recall the accused, however, should be circumscribed by the military judge's own discretionary authority to control trial proceedings. *See United States v. Panza,* 612 F.2d 432 (9th Cir.1979). The Government's right effectively to cross-examine the accused should not become a means whereby the accused is subjected to repeated examination and harassment. That stricture necessarily requires an exercise of the trial judge's discretion. In ordering an accused to answer a proper question, the military judge should shield the accused from overly repetitive questioning or inquiries which exceed the scope of direct testimony. Mil.R. Evid. 611. For that reason, it is preferable that the military judge condition the Government's request for recall upon an offer of proof which discloses the scope of the desired examination. Questioning which addresses collateral matters or which merely repeats a previous inquiry may be precluded. *Cf. United States v. Phaneuf,* 10 M.J. 831 (A.C.M.R.1981).

■ The trial judge's discretion should be employed on behalf of the Government where the accused incorrectly insists upon exercising the privilege after being advised of his earlier waiver. In this instance, the court-imposed sanction should be appropriate for the particular circumstances involved and should be flexibly applied. The military judge may order that all or a portion of the accused's testimony be stricken from the record. Mil.R.Evid. 301(f).

[W]hether all or a part of the testimony should be stricken, must depend upon the discretion of the trial judge exercised in the light of the particular circumstances. Unsatisfactory as such a generality is for a trial judge who is required to give instantaneous rulings on close questions and who does not enjoy the luxury of reflective appellate deliberation, any set of specific dogmas would be even more unworkable.

*United States v. Cardillo,* 316 F.2d 606, 613 (2d Cir.1963).

■ Alternatively, we believe that the Fifth Amendment would permit the trial counsel to comment before the members on the accused's refusal to respond to cross-examination or to impeach the accused by eliciting successive refusals to answer various questions. *See Panza, supra* at 436–438. Such comments would not run afoul of Rule 512, Military Rules of Evidence, in light of the accused's earlier waiver. Commentators have noted that:

[Rule 512] bars comment and adverse inferences only where a claim of privilege by an accused is valid. If an accused refuses to answer questions, some relating to direct examination, comment would be proper and an adverse inference could be drawn. Similarly, if an accused refuses to reveal a communication that the court rules is not privileged, comment and an adverse inference might follow.

Saltzburg, Schinasi, and Schlueter, Military Rules of Evidence Manual at 268 (1981). Obviously, neither the trial counsel nor military judge could make any comment to the members where the effect would be to impose a penalty upon the exercise of a properly invoked privilege. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

■ Applying our analysis to the facts in appellant's case, we find that under these circumstances appellant's recall to the witness stand had no prejudicial effect on the findings. The Government's second cross-examination is little more than a recapitulation of questions asked previously by the trial counsel's predecessor and the military

judge. We also note the 20-day interval separating appellant's direct testimony and the second cross-examination, a period in which appellant's recollection of his earlier testimony would certainly diminish. Fairness presumably would prevent the Government from recalling an accused following a significant lapse of time, in the absence of some effort to provide the defense with a transcript of the accused's earlier testimony. Under the facts before us, the military judge would not have abused his discretion in denying the Government's request to recall the accused. Nevertheless, even disregarding the information presented in recross examination, we find sufficient evidence on the record to reject appellant's defense of mistake of fact and to sustain the findings of the trial court. Accordingly, the findings and sentence as approved on review below are affirmed.

Chief Judge CEDARBURG and Judge MIELCZARSKI concur.