**UNITED STATES**

**v.**

**Rickey D. WELKER, 491–70–6393, Machinist's Mate First Class (E–6), U.S. Navy.**

**NMCM 92 0743.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 25 Nov. 1991.

Decided 30 June 1993.

Capt Dwight H. Sullivan, USMC, Appellate Defense Counsel.

Capt Brett D. Barkey, USMCR, Appellate Government Counsel.

Before DAVID C. LARSON, C.J., and R.A. STRICKLAND and R.M. MOLLISON, JJ.

PER CURIAM:

Pursuant to his pleas, the appellant was found guilty at general court-martial of multiple incidents of carnal knowledge, sodomy and a variety of indecent acts involving his young stepdaughter over a 2 year period, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice, 10. U.S.C. §§ 920, 925, and 934, respectively. In accordance with the terms of a pretrial agreement, several other specifications alleging offenses of a similar nature were withdrawn at trial. The appellant was sentenced by officer members to confinement for 26 years, forfeiture of all pay and allowances, reduction to pay grade E–1 and a dishonorable discharge. Pursuant to the agreement, the convening authority approved the sentence but suspended confinement in excess of 12 years for 24 months based upon certain conditions unrelated to the disposition of this appeal. On appeal, the appellant asserts six assignments of error.[1] Finding no merit in any of them, we affirm the findings and sentence.

The first two assigned errors on appeal arise from errors committed by the staff judge advocate in his post-trial recommendation to the convening authority pursuant to Rule for Courts–Martial (R.C.M.) 1106. The recommendation advised the convening authority, incorrectly, that the appellant was convicted of specification 3 of Additional Charge II following a plea of not guilty to that offense. In fact, all the offenses to which the appellant entered pleas of not guilty, including the specification in question, were withdrawn pursuant to the pretrial agreement. The appellant argues that he suffered prejudice as a result of this misstatement because the convening authority was given the erroneous impression that he had backed out of his agreement to spare his stepdaughter victim the anguish of a contested trial and was, thereby, less inclined to grant clemency on review.

 We note that the trial defense counsel failed to point out this error in his response to the recommendation under R.C.M. 1106(f)(4). His failure to do so con-

1. I. THE STAFF JUDGE ADVOCATE ERRED BY ADVISING THE CONVENING AUTHORITY THAT APPELLANT HAD BEEN CONVICTED OF A SPECIFICATION WHICH HAD ACTUALLY BEEN WITHDRAWN.

II. THE CONVENING AUTHORITY ERRED BY ACTING ON THE CASE BEFORE RECEIVING HIS STAFF JUDGE ADVOCATE'S ADVICE CONCERNING THE DEFENSE COUNSEL'S ALLEGATIONS OF LEGAL ERROR.

III. THE MILITARY JUDGE ERRED BY DENYING THE DEFENSE COUNSEL'S OBJECTION THAT THE TRIAL COUNSEL'S CROSS–EXAMINATION OF APPELLANT EXCEEDED THE SCOPE OF DIRECT EXAMINATION.

IV. APPELLANT'S COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION.

V. THE COURT–MARTIAL DID NOT HAVE JURISDICTION BECAUSE THE MILITARY JUDGE WAS NOT APPOINTED TO A FIXED TERM OF OFFICE.

VI. BECAUSE THIS COURT'S JUDGES WERE APPOINTED IN VIOLATION OF THE APPOINTMENTS CLAUSE, THIS COURT HAS NO POWER TO REVIEW APPELLANT'S CASE.

stitutes a waiver of this error unless we find that the misstatement amounts to "plain error." *United States v. Ruiz*, 30 M.J. 867 (N.M.C.M.R.1990). Plain error is error that is so egregious as to undermine the fundamental fairness of the post-trial review process and constitute a miscarriage of justice. *Id.*, 30 M.J. at 869. Plain error by definition is a material and substantial error and one that connotes a relatively high degree of prejudice. *United States v. Lowry*, 33 M.J. 1035 (N.M.C.M.R. 1991).

■ In this case, we find that the misstatement does not constitute plain error. The specification in question alleged that the appellant disrobed his stepdaughter and gave her pornography and sexual devices to arouse his sexual desires. Although the misstatement was misleading in that it advised the convening authority that the appellant was convicted of an offense that had been withdrawn, it was not substantial because it pertained to a relatively minor offense in comparison to the remaining offenses which were reported correctly. Given the overall picture of long term sexual abuse accurately presented to the convening authority, it is inconceivable that he would have been more inclined to exercise his clemency powers had he been advised correctly of the finding to this particular specification. In addition, we decline to engage in the speculation urged by the appellant that the convening authority "punished" him by denying clemency on the erroneous basis that he contested one of the offenses contrary to the terms of the pretrial agreement.

The second error in the post-trial review process concerns the staff judge advocate's failure to comment upon errors alleged in the trial by the defense counsel. Four such errors were asserted. Three pertain to the trial counsel's cross-examination of the appellant during the sentencing procedure, which is also the subject of the appellant's third error assigned on appeal. The fourth error noted below was an assertion

that permitting the Government medical expert, a licensed clinical psychologist, to testify in rebuttal improperly introduced hearsay in evidence and denied the appellant his Sixth Amendment right to confront the witnesses against him because the expert's testimony was largely based on a report prepared by another psychologist who did not testify. That error has not been reasserted on appeal.

■ The convening authority's staff judge advocate is required to respond to any assertion of error raised by the defense on review. R.C.M. 1106(d)(4). Accordingly, his failure to do so in this case was error. Nevertheless, we find that the appellant has not suffered prejudice as a result of the error because we are convinced that the assertions raised by the trial defense counsel have no merit and that a proper response by the staff judge advocate would not have been favorable to the appellant and would not have affected the convening authority's action. *United States v. Hill*, 27 M.J. 293 (C.M.A.1988).

The appellant's third assignment of error arises from the trial counsel's cross-examination of the appellant during the presentencing phase of the court-martial. On direct examination, the appellant testified, *inter alia*, that he could not explain how the offenses occurred or what led him first to sexually abuse his stepdaughter. He mentioned only two of the incidents of sexual abuse,[2] primarily for their relationship to his attempts to seek help for his "problem." He finished his direct testimony with a tearful desire for treatment for himself and his stepdaughter and a desire to be reunited with his family. He also stated that he believed he could fulfill the role of father to his children again. Record at 330.

During cross-examination, the trial counsel attempted to force the appellant to recount the details of the offenses to which he had pleaded guilty. His repeated attempts were met with repeated objections

---

**2.** These two incidents are the offenses charged in the specification under Charge I and specification 3 under the Additional Charge, as renum-

bered in the flyer provided to the members. App. Ex. VIII.

on the principal ground that, by delving into the specifics of offenses other than the two mentioned on direct examination, the trial counsel's questions exceeded the scope of direct examination. In addition, the trial defense counsel objected on the ground that the probative value of these questions was outweighed by their prejudicial effect. Record at 351. Most of these objections were overruled. To many of the questions, however, the appellant responded that he did not recall the details of specific incidents even though he had pleaded guilty to committing them. After persistent probing by the trial counsel, the appellant did testify to three different incidents of sodomy, two specific incidents of indecent acts (one of which he mentioned during direct examination) and to having sexual intercourse with his stepdaughter three or four times. Record at 339–358. All of these incidents related to one or more of the charges to which he had pleaded guilty.

In addition, the trial counsel attempted to introduce through the appellant's testimony several pieces of evidence, including various sexual devices and aids and pornography which had allegedly been recovered from the appellant's residence. The military judge sustained a strenuous objection to this attempt on the primary ground that the probative value of this evidence was outweighed by its prejudicial effect. Record at 353. Finally, the military judge did permit, over objection, questions related to an incident in which the appellant allegedly forced his stepdaughter and stepson to engage in oral sodomy with each other. Record at 356–357. These questions related to a previously charged offense that had been withdrawn pursuant to the pretrial agreement.

 When an accused voluntarily takes the witness stand to testify, he is subject to cross-examination to the same degree as any other witness. *United States v. Marymount*, 11 C.M.A. 745, 29 C.M.R. 561 (1960); *United States v. Gandy*, 5 C.M.A. 761, 19 C.M.R. 57 (1955); R.C.M. 1001(c)(2)(B). However, cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. Mil.R.Evid. 611(b). In particular, an accused may limit his testimony on the merits to an offense and thereby preserve his right against self-incrimination as to other offenses or forms of misconduct. *United States v. Castillo*, 29 M.J. 145 (C.M.A. 1989). This same limitation applies to his testimony in mitigation during the sentencing phase.[3] *United States v. Thomas*, 16 M.J. 899 (A.C.M.R.1983); R.C.M. 1001(c)(2)(A).

 The test to determine whether an accused may be cross-examined on a specific subject is whether that subject has been "reasonably raised" by his direct testimony. *United States v. Ray*, 15 M.J. 808, 810 (N.M.C.M.R.1985) (citing *Brown v. United States*, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958)). Whether the subject has been reasonably raised by direct testimony is a matter within the sound discretion of the military judge and his ruling will not be disturbed on appeal absent abuse of that discretion. *United States v. Strong*, 17 M.J. 263 (C.M.A.1984); *United States v. Vandermark*, 14 M.J. 690 (N.M.C.M.R.1982); *cf.*, Mil.R.Evid. 611(a), (b).

 In this case, the appellant testified that he was unable to relate how or why he sexually abused his stepdaughter but that he desired to be treated and to return to his family. In so doing, the appellant certainly raised the general subject of the sexual abuse of his stepdaughter and, further-

---

**3.** One significant difference between the accused's testimony on the merits and during sentencing is that, during sentencing, the right against self-incrimination under the Fifth Amendment and Article 31, UCMJ, is no longer a valid basis to object to questions about the offenses to which the accused pleaded guilty. At that point in the trial, he has given up his right against self-incrimination as to those offenses. Therefore, in this case, whether the military judge erred in permitting the trial counsel to ask questions about the offenses to which the appellant had pleaded guilty is strictly an evidentiary, as opposed to a constitutional, issue. On the other hand, the few questions directed toward other offenses do involve the right against self-incrimination.

more, we believe that he opened the door to questions intending to explore specific incidents of abuse and to test his proclaimed inability to recall such incidents. Contrast these facts with those in *United States v. Thomas*, 16 M.J. 899 (A.C.M.R.1983), which the appellant cites in support of his position. In *Thomas*, questions asked during sentencing regarding the offense were held to have exceeded the scope of direct where the accused had testified that she understood the seriousness of her offense, that she regretted committing it and that she vowed to live a law-abiding life in the future. In other words, her direct testimony did not attempt to examine the offense—it was prospective in nature. Here, the appellant's testimony on direct attempted, to some degree, to reflect upon, and to address the reasons for, the offenses. His direct testimony created the clear impression that he did not understand the nature or the cause of his sexual abuse "problem" and that psychological forces beyond his control had blocked the details of the offenses from his memory. For the most part, the questions posed by the trial counsel on cross-examination tended to explore and/or challenge these assertions and, for that reason, they fell within the scope of direct examination.

For these same reasons, we find that the probative value of these questions far outweighed any possible prejudice. Mil.R.Evid. 403. The probative nature of questions about the details of the offenses for which the appellant was soon to be sentenced is obvious. Just as probative, in our opinion, were questions that tested the degree to which the appellant was willing to "come clean" and admit his wrongdoing on cross-examination, as he purported to do through his guilty pleas and testimony on direct examination. On the other hand, we see little prejudice from those questions beyond that inherent in the sordid nature of the offenses of which the appellant, at that point, stood convicted. Even the questions about the incident involving both his stepchildren—which, at that stage of the trial, constituted uncharged misconduct—were permissible as questions intending both to explore the depth of the appellant's problem of pedophilia, *see United States v. Ciulla*, 32 M.J. 186 (C.M.A.1991), and to challenge the reasonableness of his desire to be reunited with his family.[4]

Contrary to the appellant's assertion on appeal, we do not characterize his cross-examination as evidence of a "runaway trial counsel and a military judge who was unwilling to rein him in." App. Brief at 21. We find that the military judge was in complete control. He sustained many defense objections to evidence offered on cross-examination, restrained the trial counsel the few times he became argumentative with the appellant and generally exercised his discretion in a fair and balanced manner. In summary, we find that the military judge did not abuse his discretion in overruling the trial defense counsel's objections to the cross-examination of the appellant.

Likewise, we find that the appellant's remaining assignments of error lack merit. *See United States v. Weiss*, 36 M.J. 224 (C.M.A.1992), *cert. granted*, —— U.S. ——, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993); *United States v. Graf*, 35 M.J. 450 (C.M.A. 1992).

Accordingly, the findings of guilty and the sentence as approved on review below are affirmed.

---

4. As these specific questions, which sought to incriminate the appellant as to uncharged misconduct, he waived his privilege against self-incrimination as a basis for refusing to answer them by voluntarily testifying about the same general matter during direct examination and by failing to cite this specific ground as a basis for objection. Mil.R.Evid. 301(e) and 103(a).